OPINION
{¶ 1} Plaintiff-appellant, Arrow Machine Company, Ltd., appeals the judgment of the Lake County Court of Common Pleas, dismissing its suit against defendant-appellee, Array Connector Corporation, for lack of personal jurisdiction. For the following reasons, we reverse the decision of the lower court and remand this matter for further proceedings. *Page 2 
 {¶ 2} On July 31, 2008, Arrow Machine filed suit against Array Connector for breach of contract. The Complaint alleged that Arrow Machine is an Ohio limited liability company with its principal place of business in Mentor, Ohio, and Array Connector is a Florida corporation, with its principal place of business in Miami, Florida. It was further alleged that in September 2007, Arrow Machine entered into a Purchase and Supply Agreement with Array Connector, "in the city of Mentor, Ohio," whereby "[Arrow Machine] was to manufacture and sell to [Array Connector] certain goods; and [Array Connector] agreed to purchase from [Arrow Machine] minimum quantities of such goods at specified prices during the three (3) year term of the Agreement." Arrow Machine claimed Array Connector breached the Agreement by failing "to purchase the minimum quantities of goods" and by attempting "to unilaterally terminate the Agreement, without cause."
 {¶ 3} A copy of the Agreement was attached to the Complaint. The Agreement provides, in part:
 {¶ 4} Purpose
 {¶ 5} This agreement is entered into * * * for the purpose of establishing a buy/sell business relationship based on terms outlined herein. * * *
 {¶ 6} * * *
 {¶ 7} 3. Terms of Agreement
 {¶ 8} The terms of the agreement shall commence on September 12, 2007 and shall be in effect until December 31, 2010. * * *
 {¶ 9} 4. Forecast
 {¶ 10} The seller commits to work to a forecast and manage their build schedule to accommodate fluctuations in [the] forecast. * * * Buyer commits to providing seller adequate lead time on purchase orders * * *. Buyer understands that lead times for scheduling purposes are based on raw material availability and production capacity. * * * *Page 3 
 {¶ 11} 5. Pricing
 {¶ 12} Prices for products shall be the prices shown in Attachment A. * * * If the material total cost increases [sic], then the seller will charge this overage as a surcharge on the invoices on a dollar for dollar basis. * * * Additional re-negotiations of pricing is permitted based on significant changes in market conditions, quantities, technology or design changes. * * *
 {¶ 13} 6. Delivery
 {¶ 14} Seller agrees to an on time shipping performance of 98% defined as no more than 5 days early and 0 days late to the agreed schedule. Delivery terms are F.O.B. Arrow Machine — Mentor, OH.
 {¶ 15} The Agreement further provides:
 {¶ 16} All communications and notices when required to be in writing shall [be] forwarded to the following * * * address:
 {¶ 17} Arrow Machine Array Connector Corporation
8687 Tyler Blvd 12300-8 SW 134th Court
Mentor, Oh 44060 Miami, Florida 33186
Attn: John Habe IV Attn: Robert Correa
 {¶ 18} The Agreement was signed by Habe as President of Arrow Machine on September 14, 2007, and by Correa as Materials Director or Array Connector on September 12, 2007.
 {¶ l9} On September 4, 2008, Array Connector filed a Motion to Dismiss, pursuant to Civ. R. 12(B)(2), for lack of personal jurisdiction. Array Connector asserted that it lacks "minimum contacts" with the State of Ohio according to Ohio's long-arm statute or the federal due process clause, so as to warrant the Lake County Court of Common Pleas exercise of jurisdiction over it.
 {¶ 20} In support of its Motion, Array Connector attached the affidavit of Dan Silverberg, its Chief Financial Officer. Silverberg testified that Array Connector is *Page 4 
incorporated under the laws of the State of Florida, does not have offices in Ohio, does not own property in the state of Ohio, does not conduct business in Ohio, and is not registered to do business in Ohio. Silverberg further swore to the following: Representatives of Arrow Machine traveled to Florida "to solicit orders from Array Connector Corporation for products which could be manufactured by Arrow Machine and purchased by Array Connector Corporation. Array Connector Corporation signed the agreement attached to the complaint * * * in the State of Florida. The only contact with Ohio that Array Connector Corporation had in connection with the agreement attached to the Complaint is the mailing from Florida to Ohio of checks in payment of invoices mailed from Ohio, and to occasionally make a telephone call from Florida to Ohio, or to mail or fax a Release of Goods from Florida into Ohio. * * * Array Connector Corporation did not reasonably anticipate being haled into court into [sic] Ohio based upon the fact that Arrow Machine initiated the solicitation of business from Array in Florida, and none of Array's employees or agents ever went to Ohio to conduct any negotiations leading up to the contract or went there after the contract was executed."
 {¶ 21} On October 22, 2008, the trial court entered a Judgment Entry, granting Array Connector's Motion to Dismiss, based on the arguments contained in Array Connector's Motion, Arrow Machine's Brief in Opposition, and Array Connector's Reply Brief in Support. The court held that Ohio's long-arm statute, R.C. 2307.382, did not confer personal jurisdiction over Array Connector in that there was "no evidence that [Array Connector] was `transacting business' within Ohio." The court reasoned as follows: "[T]he shipping terms, `F.O.B. Mentor, Ohio," set forth in the Agreement do not confer personal jurisdiction over [Array Connector]. There is no evidence that [Array *Page 5 
Connector] actually came to Ohio to pick up orders. The evidence provided by [Array Connector], however, is that [Arrow Machine] traveled to Florida to solicit orders from [Array Connector] and that the actual Agreement was entered into in Florida. The only contact between [Array Connector] and Ohio then was via the checks remitted to [Arrow Machine], some telephone calls and facsimile transmissions. * * * [T]hose types of contacts, in and of themselves, are not sufficient to establish personal jurisdiction over a non-resident defendant."
 {¶ 22} On October 30, 2008, Arrow Machine filed its Notice of Appeal.
 {¶ 23} Arrow Machine raises the following assignment of error on appeal: "The trial court erred and abused its discretion when it dismissed appellant's complaint for lack of personal jurisdiction over the appellee."
 {¶ 24} In theory, the inquiry into whether a court has personal jurisdiction over a defendant has two aspects: statutory and constitutional.
 {¶ 25} Ohio's "long-arm" statute provides:
 {¶ 26} "(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:
 {¶ 27} "(1) Transacting any business in this state;
 {¶ 28} * * *
 {¶ 29} "(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." R.C. 2307.382.
 {¶ 30} The practice of the Ohio courts has been to follow the lead of the Sixth Circuit and treat the subsection as substantially co-terminus with permissible *Page 6 
constitutional limits. See In-Flight Devices Corp. v. Van Dusen Air,Inc. (6th Cir., 1972), 466 F.2d 220, 224-225; cf. NRM Corp. v. PacificPlastic Pipe Co. (1973), 36 Ohio App.2d 179, 181-182. "Thus, the statutory and constitutional inquiries merge." Monroe Distrib., Inc. v.McClung, 8th Dist. No. 44991, 1983 Ohio App. LEXIS 12937, at *3.
 {¶ 31} "The question is whether the defendant's activities which purport to constitute `transacting business' in the forum state, establish the necessary nexus (minimum contacts) between the defendant and the forum state to met the requirements of due process." Id. at *3-*4.
 {¶ 32} Where a defendant moves to dismiss a complaint for lack of personal jurisdiction pursuant to Civ. R. 12(B)(2), "the plaintiff has the burden of making a prima facie showing of personal jurisdiction."Buchheit v. Watson, 11th Dist. No. 2001-L-189, 2002-Ohio-7147, at ¶ 19 (citation omitted); Diversa, Inc. v. Pennsylvania Substance AbuseInformation Ctr, 11th Dist. No. 95-P-0028, 1996 Ohio App. LEXIS 1222, at *13 (citation omitted). "A trial court is not confined to the allegations of the complaint in reviewing a motion to dismiss for lack of personal jurisdiction." Buchheit, 2002-Ohio-7147, at ¶ 19 (citation omitted). Rather, "the court may hear the matter on affidavits, depositions, interrogatories, or receive oral testimony."Diversa, 1996 Ohio App. LEXIS 1222, at *13 (citation omitted).
 {¶ 33} "If the court holds no evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdiction to withstand a motion to dismiss. If plaintiff produces evidence from which reasonable minds could find personal jurisdiction, the court must refuse dismissal, absent an evidentiary hearing." Id. at *13-*14 (citation omitted). Where the court decides the motion without hearing, it is "to view allegations in the *Page 7 
pleadings and the documentary evidence in a light most favorable to the plaintiffs, resolving all reasonable competing inferences in their favor." Goldstein v. Christiansen, 70 Ohio St.3d 232, 236,1994-Ohio-229. Where the issue is resolved as a matter of law, the standard of appellate review is de novo. LaFarge N. Am., Inc. v.Forbes, 11th Dist. No. 2008-T-0034, 2008-Ohio-5864, at ¶ 13 (citation omitted); Buchheit, 2002-Ohio-7147, at ¶ 19 (citation omitted).
 {¶ 34} Construing the evidence before the trial court in a light most favorable to Arrow Machine, Array Connector was "transacting business" within the State of Ohio as contemplated by Ohio's long-arm statute and Civil Rules. The following factors are significant: Arrow Machine alleged in its complaint that it "entered into [a] Purchase and Supply Agreement * * * with Defendant, in the city of Mentor"; the Agreement creates an ongoing, three-year relationship between the parties; communications between Ohio and Florida occur by telephone, facsimile, and mail; payments for goods purchased are remitted to Ohio; communications and notices were required to be forwarded to Mentor; and goods manufactured were to be delivered "F.O.B. Arrow Machine — Mentor, OH."
 {¶ 35} The trial court concluded that the contract had been entered into in Florida, but this conclusion is not supported by the evidence. Silverberg's affidavit only stated that Array Connector signed the agreement in Florida. According to the Complaint, Arrow Machine "entered into [the] Purchase and Supply Agreement * * * in the city of Mentor." Construing the evidence in Arrow Machine's favor, we must conclude that each party signed the Agreement in their home state.
 {¶ 36} The trial court noted that there was no evidence, despite the term "F.O.B. Arrow Machine — Mentor," that Array Connector "came to Ohio to pick up orders." *Page 8 
However, both the United States and Ohio Supreme Courts have consistently rejected
the notion that a physical presence in the forum state is necessary for the exercise of personal jurisdiction. Burger King Corp. v.Rudzewicz (1985), 471 U.S. 462, 476 ("Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted."); Goldstein,70 Ohio St.3d at 236.
 {¶ 37} Construed in Arrow Machine's favor, the term "F.O.B. Arrow Machine — Mentor" demonstrates that Array Container took title to the goods in Ohio and, therefore, possessed an insurable interest in Ohio.[1] As such, this term supports the determination that Array Container is subject to Ohio jurisdiction. Cf. R.C. 2307.382(A)(9) (providing for personal jurisdiction over a person who "[c]ontract[s] to insure any person, property, or risk located within this state at the time of contracting").
 {¶ 38} The next step of the inquiry requires us to consider whether Array Connector has established sufficient "minimum contacts" with Ohio to satisfy the requirements of due process. We conclude that the evidence, detailed above, satisfies these requirements inasmuch as Array Connector has purposefully directed its business activities toward Ohio residents so that it "should reasonably anticipate being haled into *Page 9 
court [here]." Burger King, 471 U.S. at 474, citing World-WideVolkswagen Corp. v. Woodson (1980), 444 U.S. 286, 297. This conclusion is consistent with the position of the United States Supreme Court that, "where the defendant * * * has created `continuing obligations' between himself and residents of the forum * * *, he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by `the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." Id. at 475-476 (internal citation omitted). In the present case, the Agreement between parties committed them to a three-year business relationship, the specific terms of which, such as requirements/forecast and pricing, were subject to further negotiation.
 {¶ 39} The trial court relied on the case of Monroe Distrib., Inc. v.McClung, 1983 Ohio App. LEXIS 12937, in support of its holding. InMonroe, the court held that due process was not satisfied where "[t]he defendant's sole contacts with Ohio were his dealings with the plaintiff"; "his contacts were initiated by the plaintiff in West Virginia and maintained via the mail and telephone"; "[t]he defendant never supplied goods or services in Ohio, nor did he solicit business here"; and the "contacts were merely communication, the mailing of checks, and the return of two items of purchase." Id. at *4.
 {¶ 40} Although Monroe is factually similar to the present case, we do not find it persuasive in light of other authorities. Subsequent toMonroe, the Ohio Supreme Court decided Kentucky Oaks Mall Co. v.Mitchell's Formal Wear, Inc. (1990), 53 Ohio St.3d 73, which found sufficient minimum contacts where the defendant's contacts with Ohio were far more attenuated than those of Array Connector. In KentuckyOaks, an Ohio *Page 10 
limited partnership contracted with a Georgia corporation for the lease of commercial realty located in Kentucky. The Supreme Court cited the following circumstances, also present in this case, as supporting the determination that the defendant "intentionally andpurposefully directed activities" at Ohio: negotiations were conducted by telephone with the plaintiff in Ohio; the contract was signed in Georgia by the defendant and sent to Ohio to be signed by the plaintiff; the contract required the defendant to make regular payments to Ohio; the failure to make these payments would result in "foreseeable injuries" within Ohio. Id. at 77-78. Lastly, the Supreme Court noted that "Ohio has an interest in resolving suits brought by one of its residents and has a substantial interest in seeing that its residents get the benefit of their bargains." Id. at 78 (citation omitted).
 {¶ 41} Other cases, decided after Kentucky Oaks, likewise, support the finding of minimum contacts in the present case. Barnabas ConsultingLtd. v. Riverside Health Sys., 10th Dist. No. 07AP-1014, 2008-Ohio-3287, at ¶ 24 ("[defendant's transaction of business in Ohio — its entering of a contractual relationship with an Ohio corporation — is necessarily the very soil from which the action for breach grew") (citation omitted);Diversa, 1996 Ohio App. LEXIS 1222, at *11 (a prima facie showing of personal jurisdiction existed where "appellants initiated contract negotiations with appellee in Ohio; the negotiations were carried on by mail and telephone with appellee at its office in Kent, Ohio; the signed contracts were sent to appellee in Ohio; appellee performed the vast majority of services under the contracts in Ohio, as contemplated by the parties; and, an ongoing relationship was established requiring appellants to transmit all payments to appellee in Ohio"); Pharmed Corp.v. Biologics, Inc. (1994), 97 Ohio App.3d 477, 483 (finding it "important" that "Biologics, in Florida, engaged in *Page 11 
negotiations with Pharmed, in Ohio" and that the "parties * * * established a contract with continuing and ongoing duties and obligations").
 {¶ 42} The only material factor distinguishing these cases from the one before us is that, in them, the foreign litigant/corporation initiated the negotiations resulting in the contractual agreement. Although a significant consideration, it is not dispositive in light of the other circumstances arguing in favor of personal jurisdiction. The evidence before us demonstrates that Arrow Machine has made a prima facie showing of jurisdiction sufficient to withstand a motion to dismiss. We need not speculate as to whether it would meet its ultimate burden of proving jurisdiction by a preponderance of the evidence.Buchheit, 2002-Ohio-7147, at ¶ 20.
 {¶ 43} The sole assignment of error is with merit.
 {¶ 44} For the foregoing reasons, the judgment of the Lake County Court of Common Pleas, dismissing Arrow Machine's Complaint for lack of personal jurisdiction over Array Corporation, is reversed. This matter is remanded for further proceedings consistent with this opinion. Costs to be taxed against appellee.
MARY JANE TRAPP, P.J., COLLEEN MARY OTOOLE, J., concur.
[1] As defined in the Revised Code, "the term F.O.B. (which means `free on board') at a name place * * * is a delivery term under which * * * when the term is F.O.B. the place of shipment, the seller must at that place ship the goods in the manner provided in section 1302.48 of the Revised Code and bear the expense and risk of putting them into the possession of the carrier." R.C. 1302.32(A)(1). Thus, when goods are to be shipped F.O.B. seller's plant, "[t]he seller was required only to place the goods in the possession of a carrier, make a reasonable contract for shipment, tender documents of title, and notify the buyer of the shipment." Alliance Wall Corp. v. Ampat Midwest Corp. (1984),17 Ohio App.3d 59, 62. *Page 1