[Cite as *Am. Wholesale Outlet, L.L.C. v. Eckert*, 2024-Ohio-5680.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
MAHONING COUNTY

AMERICA'S WHOLESALE OUTLET LLC,

Plaintiff-Appellant,

v.

DANYEL ECKERT,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 24 MA 0056**

---

Civil Appeal from the
Court of Common Pleas of Mahoning County, Ohio
Case No. 2024 CV 00202

**BEFORE:**
Katelyn Dickey, Cheryl L. Waite, Carol Ann Robb, Judges.

---

**JUDGMENT:**
Reversed and Remanded.

---

*Atty. Martin P. Desmond*, for Plaintiff-Appellant and

*Atty. Bradley G. Olson, Jr.*, for Defendant-Appellee.

Dated: December 4, 2024

**DICKEY, J.**

{¶1} Plaintiff-Appellant, America's Wholesale Outlet LLC, appeals the judgment entry of the Mahoning County Court of Common Pleas granting the motion to dismiss filed by Defendant-Appellee, Danyel Eckert, in this action for theft, falsification, tampering with records, and fraud. The trial court concluded counts one through three of the complaint are untimely, as they are governed by the one-year statute of limitations applicable to punitive statutes, rather than the six-year statute of limitations applicable to remedial statutes. The trial court further concluded that it did not have personal jurisdiction over Appellee because she committed the acts alleged in the complaint in her home state of Pennsylvania and her only contact with Ohio was her roughly seventeen months of employment with Appellant. For the following reason, the judgment entry dismissing the complaint is reversed, and this matter is remanded for further proceedings.

## FACTS AND PROCEDURAL HISTORY

{¶2} The following facts are taken from the complaint. Appellant is a domestic limited-liability corporation formed and acting under the laws of the State of Ohio with its principal place of business in Mahoning County, Ohio. Appellant is wholly owned by Michael Mercure, a resident of Mahoning County, Ohio. ("Mercure") Appellee is an individual residing in Pennsylvania and was employed for roughly seventeen months by Appellant.

{¶3} In April of 2021, Appellant hired Appellee as one of its office managers to handle the accounts payables/receivables and payroll. Appellant also employed a storefront manager to work together with Appellee on these responsibilities.

{¶4} As part of Appellant's payroll process, the storefront manager calculated the total hours worked for each employee based on their timesheets during each pay period. Once compiled, the storefront manager submitted the total hours worked for each employee to Appellee, who provided the information to Payroll Pros, which prepared paychecks for the employees. The storefront manager did not calculate Appellee's hours, as Appellee kept her own hours and provided them to Payroll Pros with the other employees' hours. Appellee submitted the payroll information either via electronic mail or telephone. Appellee was paid an hourly rate of $20.

Case No. 24 MA 0056

**{¶5}** Appellee's office is located at Appellant's main location at 6151 South Avenue, Boardman, Mahoning County, Ohio. Appellee was not authorized to work from home or any other location.

**{¶6}** The storefront manager also worked at Appellant's main location, Monday through Friday from 8:00 a.m. to 5:00 p.m., but regularly arrived early and stayed late. The storefront manager observed Appellee's daily work routine, including when Appellee arrived for work and departed for the day.

**{¶7}** In or around July of 2022, Mercure arrived at Appellant's main location and wanted to speak with Appellee. The storefront manager informed Mercure that Appellee had left for the day, even though the work day was not complete. The storefront manager further informed Mercure that Appellee routinely arrived late to work (between 10:00 - 11:00 a.m.) and left early (between 1:00 - 2:00 p.m.), and that Appellee was typically in the office only two to four days a week.

**{¶8}** Mercure instructed the storefront manager track Appellee's arrival and departure times. For the next four weeks, the storefront manager tracked Appellee's work times.

**{¶9}** During the week of August 22, 2022, Appellee worked five hours and thirty minutes. During the week of August 29, 2022, Appellee worked five hours and fifteen minutes. During the week of September 5, 2022, Appellee worked six hours and forty-five minutes. During the week of September 12, 2022, Appellee worked five hours and thirty minutes.

**{¶10}** However, Appellee submitted documentation for payment for twenty-five hours of work per week. Although Appellee only worked twenty-six hours and thirty minutes in the four weeks at issue, she submitted documentation for payment for one-hundred hours. In other words, Appellee was paid $2,000, but should have only been paid $530.00, resulting in an overpayment of $1,470 for the four weeks at issue.

**{¶11}** From April 12, 2021, through December 31, 2021, Appellee submitted payroll information claiming nine-hundred and twenty-five total hours worked and received payments totaling $11,100. From January 1, 2022, to September 14, 2022, Appellee submitted payroll documentation claiming nine-hundred and two total hours worked and received payments totaling $18,040.

{¶12} In September of 2022, Mercure and the storefront manager confronted Appellee with the discrepancies in her hours worked versus her hours billed and the amount she was paid. Mercure advised Appellee that the payroll information showed she took over $20,000 in payments that she was not entitled to receive.

{¶13} Appellee admitted she took the overpayments and agreed to pay them back. Mercure terminated Appellee's employment and she left the office.

{¶14} However, after Appellee returned home, she informed Mercure that she did not intend to return the money. Over the next several months, Mercure attempted to obtain payment from Appellee to no avail.

{¶15} In November of 2023, for the first time, Appellee, through counsel, claimed the discrepancy in the hours worked versus hours billed represented time she was working from home. However, Appellee was not authorized to work from home. The accounts receivable/payable and payroll information necessary to complete her duties were located in Appellant's office, as was Appellee's desktop computer.

{¶16} Over the next several months, Appellant took steps to identify the amount stolen, including locating and analyzing payroll information and interviewing employees. Nonetheless, Appellee continued to refuse to return the overpayment.

{¶17} Appellant has since employed a replacement to perform the duties previously undertaken by Appellee. The replacement, on average, spends only eight hours a week on those duties, as opposed to the twenty-five hours claimed by Appellee. In addition to the overpayment, Appellant alleges it has incurred and will continue to incur additional expenses to recover the stolen funds from Appellee.

{¶18} On January 31, 2024, Appellant filed the complaint against Appellee alleging theft in violation of R.C. 2913.02; falsification in violation of R.C. 2921.13; tampering with records in violation of R.C. 2913.42; and fraud. Appellant predicated the first three counts of the complaint on R.C. 2307.60, captioned "Person injured by criminal act has civil remedy; exceptions," which reads, in relevant part:

> Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another

section of the Revised Code or under the common law of this state, and may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

R.C. 2307.60(A)(1). The statute does not contain a limitations period, and the Ohio Supreme Court has not addressed the limitations issue as it specifically relates to R.C. 2307.60.

{¶19} On March 5, 2024, Appellee filed a motion to dismiss the complaint arguing the first three counts were untimely filed, because R.C. 2307.60 was punitive in nature and subject to the one-year statute of limitations in R.C. 2305.1(A). R.C. 2305.11(A) provides in relevant part, "an action upon a statute for a penalty or forfeiture shall be commenced within one year after the cause of action accrued." Appellee further argued the trial court did not have personal jurisdiction over her, so the fraud claim must likewise be dismissed.

{¶20} On March 19, 2024, Appellant filed a memorandum in opposition to the motion to dismiss. Appellant argued R.C. 2307.60 was remedial in nature and governed by the statute of limitations in R.C. 2305.07(B). R.C. 2305.07(B) reads, "[a]n action upon a liability created by statute other than a forfeiture or penalty shall be brought within six years after the cause of action accrued." Appellant further argued the trial court had personal jurisdiction over Appellee as she transacted business in Ohio and caused tortious injury to occur here, and purposefully availed herself to Ohio by accepting employment in the state.

{¶21} On May 22, 2024, the trial court sustained Appellee's motion to dismiss the complaint. The trial court cited *Cleveland Mobile Radio Sales, Inc. v. Verizon Wireless*, 2007-Ohio-2203, for the proposition that R.C. 2307.60(A)(1) is a punitive statute. In *Cleveland Mobile*, the Supreme Court considered whether R.C. 4905.61 constitutes a penalty statute for statute of limitations purposes. R.C. 4905.61 provides in part that if a public utility violates certain laws, " 'such public utility * * * is liable to the person, firm, or corporation injured thereby in treble the amount of damages sustained in consequence of such violation, failure, or omission.' " *Cleveland Mobile* at ¶ 13, quoting R.C. 4905.61.

Case No. 24 MA 0056

**{¶22}** The Ohio Supreme Court considered the following factors to determine whether a statute is penal or remedial: the statute at issue and its context; whether the primary purpose of the statute is to penalize or remedy and compensate; and the methods used by the General Assembly to accomplish the goals and overall purpose of the statutory scheme. *Id.* at ¶ 16.

**{¶23}** Applying those factors, the *Cleveland Mobile* Court opined, R.C. 4905.61 "does not simply compensate an injured party with an award for actual damages but, rather, incorporates a treble-damage award provision *and* provides that any recovery by a private plaintiff pursuant to it does not preclude the state from seeking additional penalties." (Emphasis sic.) *Id.* at ¶ 18. Thus, the Ohio Supreme Court concluded the statute "was designed to augment enforcement of the law and to deter violations through penalties rather than to simply compensate consumers for violations." *Id.*

**{¶24}** The trial court further predicated its conclusion on an Eighth District case in which the Eighth District specifically addressed R.C. 2307.60, finding the statute at issue in this appeal contemplates a penalty, and "is subject to the one-year statute of limitations in R.C. 2305.11(A)." *State ex rel. Cty. of Cuyahoga v. Jones Lang Lasalle Great Lakes Corporate Real Estate, LLC*, 2017-Ohio-7727 at ¶ 131 (8th Dist.) (applying the rule of law first announced in *Steinbrick v. Cleveland Elec. Illuminating Co.*, 1994 WL 463817 (8th Dist. Aug. 25, 1994)).

**{¶25}** Finally, the trial court distinguished R.C. 2307.60(A)(1) from R.C. 2307.70(B)(1), a statute creating a civil action for damages for vandalism, which we concluded was remedial in nature in *Brothers v. Nixon*, 2020-Ohio-4035 (7th Dist.) (J. D'Apolito dissenting). The majority opinion in *Brothers* predicated its conclusion that subsection (B)(1) of R.C. 2307.70 was remedial because it did not provide for punitive damages in a suit against the parents of a vandal under the age of 18. The *Brothers* case is described in greater detail in our analysis of Appellant's second assignment of error.

**{¶26}** Next, the trial court concluded it did not have personal jurisdiction over Appellee. The trial court reasoned it could not exercise specific jurisdiction over Appellee because "the [c]omplaint plainly alleges that [Appellee's] fraudulent activity occurred while she was present in her home state of Pennsylvania." (5/22/24 J.E., p. 6.) The trial court further reasoned it could not exercise general jurisdiction over Appellee because "[t]here

are no allegations contained in [the complaint] which suggest [Appellee] continued to have contact with the State of Ohio after her employment with [Appellant] was terminated." (*Id.* at p. 6-7.) As a consequence, the trial court dismissed the timely-filed fraud claim as well.

**{¶27}** This timely appeal followed.

## ASSIGNMENT OF ERROR NO. 1

**THE TRIAL COURT ERRED BY CONCLUDING IT LACKED PERSONAL JURISDICTION OVER [APPELLEE] AND DISMISSING THE COMPLAINT.**

**{¶28}** A party may challenge personal jurisdiction in a motion to dismiss. Civ.R. 12(B)(2). When a defendant files a motion to dismiss a complaint for lack of personal jurisdiction, the plaintiff has the burden of making a prima facie showing of personal jurisdiction. *Fallang v. Hickey*, 40 Ohio St.3d 106, 107 (1988). Where the motion is decided without holding a hearing, the trial court is "to view allegations in the pleadings and the documentary evidence in a light most favorable to the plaintiffs, resolving all reasonable competing inferences in their favor." *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 236 (1994).

**{¶29}** In determining whether to grant a motion to dismiss based on a lack of personal jurisdiction, the trial court is not confined to the allegations contained in the complaint, but may hear the matter on affidavits, depositions, interrogatories, or by oral testimony. *Arrow Machine Co., Ltd. v. Array Connector Corp.,* 2009-Ohio-1439, ¶ 32 (11th Dist.). However, neither party attached any additional evidence to the pleadings.

**{¶30}** Personal jurisdiction is a question of law that appellate courts review de novo. *Kauffman Racing Equip., L.L.C. v. Roberts*, 2010-Ohio-2551, ¶ 27. "Determining whether an Ohio trial court has personal jurisdiction over a nonresident defendant involves a two-step analysis." *Id.* at ¶ 28. The first step is whether the long-arm statute and the applicable rule of civil procedure confer jurisdiction. If they do, then the second step is whether the exercise of jurisdiction would deprive the nonresident defendant of

Case No. 24 MA 0056

the right to due process of law under the Fourteenth Amendment to the United States Constitution. *Id.*

**{¶31}** Ohio's long-arm statute, codified as R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) governing service of process, permit a court to exercise personal jurisdiction over a nonresident defendant and provide for service of process when the cause of action arises from the nonresident's "transacting any business" in Ohio. The term "transacting business," for purposes of R.C. 2307.382(A)(1) and Civ.R. 4.3, has been broadly interpreted and encompasses "carrying on business" and "having dealings" in the state. *Hercules Tire & Rubber Co. v. Murphy*, 133 Ohio App.3d 97, 100 (1999), citing *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.*, 53 Ohio St.3d 73 (1990). ["P]ersonal jurisdiction does not require physical presence in the forum state." *Id.* Whether a defendant has transacted any business in Ohio is determined on the particular facts of the case. *U.S. Sprint Communications Co. Partnership v. Mr. K's Foods, Inc.*, 68 Ohio St.3d 181, 185 (1994). An Ohio Court may also exercise personal jurisdiction over a person as to a cause of action arising from the person's causing tortious injury by act or omission in Ohio or by an act or omission outside of the state if the person regularly does or solicits business, or engages in any other persistent course of conduct. R.C. 2307.382(A)(3) and (4); Civ. R. 4.3(A)(3) and (4).

**{¶32}** In general, the Fourteenth Amendment's due process clause prohibits a state from entering judgment against a nonresident defendant unless the defendant has such minimum contacts with the state that the exercise of jurisdiction comports with principles of fair play and substantial justice. *Walden v. Fiore*, 571 U.S. 277, 283 (2014). Personal jurisdiction is characterized as general or specific, depending upon the nature of the defendant's contacts with the forum state. *Kauffman Racing* at ¶ 46. General personal jurisdiction involves continuous and systematic contacts which allow a state to exercise personal jurisdiction over the defendant even if the action is unrelated to the contacts, whereas specific personal jurisdiction requires the suit to arise out of or be related to the defendant's contacts with the forum state. *Id.* at ¶ 47.

**{¶33}** In determining whether the exercise of specific personal jurisdiction comports with due process, the court determines whether: (1) the defendant purposefully availed himself of the privilege of acting in the forum state or causing a consequence in

Case No. 24 MA 0056

the forum state; (2) the cause of action arose from the defendant's activities in the forum state; and (3) the acts of the defendant or consequences caused by the defendant have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Id.* at ¶ 49-50.

**{¶34}** The requirement of "purposeful availment" ensures a defendant will not be forcibly drawn into a jurisdiction solely as a result of contacts that are random, fortuitous, or attenuated; rather, it ensures a defendant would reasonably anticipate being hailed into court due to his conduct and connection with the forum. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-475 (1985); *Kauffman Racing* at ¶ 51. The purposeful availment test is met if the defendant has deliberately engaged in significant activities within a forum state or has deliberately created continuing obligations between himself and residents of the forum. *Id.*

**{¶35}** Appellee was employed in Ohio for roughly seventeen months. According to a fellow employee, she was at the office two to four days a week during that time. During her employment, Appellant contends Appellee overbilled her work hours. As a consequence, we find Appellee transacted business in Ohio, and allegedly caused tortious injury to Appellant here as well. Therefore, we find she meets the requirements of Ohio's long-arm statute and the civil rule.

**{¶36}** We further find that the trial court's exercise of personal jurisdiction over Appellee does not offend due process. Appellee purposefully availed herself of the privilege of acting in Ohio and causing consequences in Ohio. The four claims asserted in the complaint arose from her activities in Ohio, and her actions or the consequences of her actions have a substantial enough connection with Ohio to make the exercise of jurisdiction over the defendant reasonable. Further, Ohio has an interest in protecting its citizens from fraud, and compensating them for damages suffered as a consequence of criminal conduct.

**{¶37}** The trial court predicated its conclusion that it cannot exercise specific jurisdiction over Appellee because her conduct was committed in Pennsylvania, not Ohio. However, the complaint plainly states Appellee was not authorized to work from home. Moreover, the complaint does not establish the state in which Appellee resided during her employment. Finally, even assuming Appellee was a Pennsylvania resident during her

employment, the long-arm statute reaches extraterritorial conduct that causes tortious injury in Ohio.

**{¶38}** The trial court further concluded that it cannot exercise general jurisdiction over Appellee because there is no evidence that she returned to Ohio after her employment was terminated. Because we have found the trial court had specific jurisdiction over Appellee, we do not undertake a general personal jurisdiction analysis.

**{¶39}** In summary, Appellee transacted business in Ohio, as she was employed by an Ohio company to work in its local office for seventeen months. According to the allegations in the complaint, Appellee caused tortious injury in Ohio. Further, Appellee's contacts with Ohio are not random, attenuated, or fortuitous, therefore she should have reasonably anticipated being hailed into an Ohio court should issues arise related to her employment with Appellant. Accordingly, we find Appellant's first assignment of error has merit, as the trial court erred in concluding that it did not have specific personal jurisdiction over Appellee.

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED BY CONCLUDING CLAIMS UNDER OHIO REVISED CODE 2307.60 ARE SUBJECT TO THE ONE-YEAR STATUTE OF LIMITATIONS AND BY DISMISSING CLAIMS 1, 2, AND 3.**

**{¶40}** R.C. 2305.11(A) sets a limitations period of one year for "an action upon a statute for a penalty or forfeiture." R.C. 2305.07 provides a six-year limitations period for "an action upon a liability created by statute other than a forfeiture or penalty." The applicable statute of limitations presents a question of law an appellate court reviews de novo. *Haskins v. 7112 Columbia, Inc.*, 2016-Ohio-5575, ¶ 15 (7th Dist.).

**{¶41}** R.C. 2307.60(A)(1) reads:

> Anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law, may recover the costs of maintaining the civil action and attorney's fees if authorized by any provision of the Rules of Civil Procedure or another section of the Revised Code or under the common law of this state, and

may recover punitive or exemplary damages if authorized by section 2315.21 or another section of the Revised Code.

{¶42} When a court considers the meaning of a statute, the first step is to determine whether the statute is "plain and unambiguous." *State v. Hurd*, 89 Ohio St.3d 616, 618 (2000). If "the language of a statute is plain and unambiguous and conveys a clear and definite meaning there is no occasion for resorting to rules of statutory interpretation," because "an unambiguous statute is to be applied, not interpreted." *Sears v. Weimer*, 143 Ohio St. 312 (1944), paragraph five of the syllabus.

{¶43} The Ohio Supreme Court has opined that ambiguity means that a statutory provision is "capable of bearing more than one meaning." *Dunbar v. State*, 2013-Ohio-2163, ¶ 16. Without "an initial finding" of ambiguity, "inquiry into legislative intent, legislative history, public policy, the consequences of an interpretation, or any other factors identified in R.C. 1.49 is inappropriate." *Id.*; *State v. Brown*, 2015-Ohio-486, ¶ 10.

{¶44} In construing an ambiguous statute, a court must ascertain the intent of the legislature. *In re Guardianship of Lombardo*, 86 Ohio St.3d 600, 604 (1999), citing *State ex rel. Sinay v. Sodders*, 80 Ohio St.3d 224, 227 (1997). In determining intent, a court must look to the language of the statute, giving effect to the words used and not deleting words used or inserting words not used. *Rice v. CertainTeed Corp.*, 84 Ohio St.3d 417, 419 (1999); *Cline v. Ohio Bur. of Motor Vehicles*, 61 Ohio St.3d 93, 97 (1991).

{¶45} In *Rosette v. Countrywide Home Loans, Inc.*, 2005-Ohio-1736, the Ohio Supreme Court was asked to determine the statute of limitations applicable to R.C. 5301.36. Pursuant to R.C. 5301.36(C), a "mortgagor may recover, in a civil action, damages of two hundred fifty dollars" if the mortgagee fails to record the satisfaction of a residential mortgage with the appropriate county recorder's office within 90 days from the date of satisfaction.

{¶46} The Court opined the statutory language was clear, as the statute created a civil action for damages. The Court reasoned the General Assembly could have used the term "penalty" or "forfeiture" if it had intended R.C. 5301.36(C) to create an action for a penalty forfeiture, citing R.C. 1321.56 ("[a]ny person who willfully violates section 1321.57 of the Revised Code shall forfeit to the borrower the amount of interest paid by the borrower"), and R.C. 149.351(B)(2) (providing that any person aggrieved by the

removal, destruction, transfer, or mutilation of a public record may bring a civil action to recover a "forfeiture in the amount of one thousand dollars for each violation").

**{¶47}** We reached the same conclusion regarding a statute similar to the statute at issue in this appeal in *Brothers v. Nixon*, 2020-Ohio-4035 (7th Dist.) (J. D'Apolito dissenting). In that case, a minor child vandalized the victims' home. The victims asserted a civil action for damages for vandalism pursuant to R.C. 2307.70(B)(1) against the parents of the minor child.

**{¶48}** R.C. 2307.70, captioned "Civil liability for vandalism, desecration, or ethnic intimidation; parental liability for child's acts," reads in relevant part:

> (B)(1) Any person who suffers injury or loss to person or property as a result of an act committed in violation of section 2909.05, 2927.11, or 2927.12 of the Revised Code by a minor child has a civil action against the parent of the minor child and may recover in that action compensatory damages not to exceed fifteen thousand dollars, court costs, other reasonable expenses incurred in maintaining that action, and reasonable attorney's fees incurred in maintaining that action. A parent and the parent's minor child are jointly and severally liable as specified in this division for the injury or loss to person or property caused by the minor child's act committed in violation of section 2909.05, 2927.11, or 2927.12 of the Revised Code. If a person recovers compensatory damages from a parent of a minor child pursuant to this division, that recovery does not preclude the person from maintaining a civil action against the minor child pursuant to division (A) of this section.

**{¶49}** It is important to note that subsection (A) of the statute creates a civil action against the vandal, and includes recovery of full compensatory damages, including damages for emotional distress, as well as punitive or exemplary damages, plus reasonable expenses and attorney's fees. The victims in *Brothers* did not file a claim against the minor vandal.

**{¶50}** The parents sought summary judgment on the claim against them, arguing it was an action upon a penalty statute and barred by the one-year statute of limitations

in R.C. 2305.11. The victims opposed summary judgment, arguing their R.C. 2307.70(B)(1) claim was subject to a six-year statute of limitations. The trial court held that the claim was governed by the two-year statute of limitations in R.C. 2305.10 and that the claim was timely filed.

**{¶51}** On appeal, we concluded R.C. 2307.70(B)(1) is not a penalty statute based on the text of the statute, which focuses on making the victim whole or remedying a wrong done to a victim, as it does not contain the terms "penalty" or "forfeit." *Id.* at ¶ 22. Significantly, we rejected the parents' argument that R.C. 2307.70 is penal in nature because subsection (A), which creates a civil action against the vandal, provides for punitive damages.

**{¶52}** Although we recognized " '[t]he purpose of punitive damages is not to compensate a plaintiff, but to punish and deter conduct,' " *Id.* at ¶ 23, quoting *Moskovitz v. Mt. Sinai Med. Ctr.*, 69 Ohio St.3d 638, 651 (1994), we concluded the availability of punitive damages alone is not a sufficient reason to categorize the statute as a penalty statute. We reasoned:

> First, as previously explained, R.C. 2307.70 independently creates a cause of action for vandalism victims, which implicates that the statute is not intended to punish defendants. Second, "punitive damages are awarded as a mere incident of the cause of action in which they are sought." *[Moskovitz]* at 650, 635 N.E.2d 331. Thus, without compensatory damages provided by the statute, there is no claim for punitive damages. Third, as explained below, punitive damages are not completely determinative of whether a statute is penal in nature. Fourth, [the victims'] claim was premised on R.C. 2307.70(B)(1)[civil action against parents], not (A), and [(B)(1)] does not provide for punitive damages.

*Brothers* at ¶ 24.

**{¶53}** Our observation that punitive damages are not completely determinative of whether a statute is penal in nature, was based on two Ohio Supreme Court cases, in which the Court held "[a] law is not penal merely because it imposes an extraordinary liability on a wrongdoer in favor of a person wronged, which is not limited to damages

suffered by him." *Brothers* at ¶ 32 (citing *Rice v. CertainTeed Corp.*, 84 Ohio St.3d 417 (1999), and *Cosgrove v. Williamsburg of Cincinnati Mgt. Co., Inc.*, 70 Ohio St.3d 281 (1994)). "*Rice* specifically held that a statute providing for punitive damages does not automatically render it penal in nature." *Brothers* at ¶ 32.

**{¶54}** Nonetheless, Ohio courts prior to 2022 that have considered the appropriate statute of limitations have concluded R.C. 2309.60 is penal in nature. *See, e.g.*, *Steinbrick v. Cleveland Elec. Illuminating Co.*, 1994 WL 463817 (8th Dist. Aug. 25, 1994) (punitive damages provision evinces constitutes a penalty); *Ettayem v. H.E.R., LLC.*, 2020-Ohio-4647, ¶ 24, 26 (5th Dist.) (pursuant to *Steinbrick*, "[a] claim under R.C. 2307.60 is * * * subject to the one-year statute of limitations set by R.C. 2305.11(A)"); *Sampson v. Cleveland*, 2020 WL 4904847 (N.D. Ohio Aug. 20, 2020) at *3 ("The statute of limitations for [plaintiff's] state law claims is one year following the date the claims accrued. *See* * * * R.C. 2307.60 (criminal acts liability)."); *Marquardt v. Carlton*, 2019 WL 1491966 (N.D. Ohio Apr. 2, 2019) at *3, rev'd on other grounds, *Marquardt v. Carlton*, 971 F.3d 546 (6th Cir. 2020) ("Plaintiff has not cited, and the court has not identified, a single case that has applied the six-year statute of limitations to 2307.60(A)(1) claims. Consequently, the court finds that the applicable statute of limitations for claims brought under O.R.C. 2307.60(A)(1) is the one-year period identified in O.R.C. 2305.11(A)"); and *Roarty-Nugent v. Cuyahoga Cty.*, 2020 WL 5530354 (N.D. Ohio Sept. 15, 2020) at *6 ("Plaintiff's claim for Civil Liability for Criminal Acts [under R.C. 2307.60(A)(1)] is barred by the one-year statute of limitations [in R.C. 2305.11(A)(1)].").

**{¶55}** The pre-2022 case law was recognized and reluctantly applied by the Northern District of Ohio in *Brack v. Budish*, 539 F.Supp.3d 794 (N.D. Ohio 2021). In that case, the plaintiff asserted civil liability claims for various criminal acts under R.C. 2307.60. The plaintiff, relying on *Rosette*, 2005-Ohio-1736, argued that the six-year statute of limitations in R.C. 2305.07 should apply. The defendant, citing several state and federal cases, maintained that the one-year statute of limitations in R.C. 2305.11(A) applied to bar the plaintiff's claims.

**{¶56}** The district court noted that "[e]very court that has considered the issue, State or federal, applies a one-year limitations period to claims under Section 2307.60. Plaintiff cites no case casting doubt on this conclusion, and the Court's research has not

located any. Based on these longstanding, uniform rulings, the Court is hard pressed to reach any other conclusion." *Brack* at 800.

**{¶57}** Despite the clear precedent, the Northern District of Ohio observed:

> Plaintiff's arguments have considerable force, however, and on a blank slate might well carry the day. On its face, Section 2307.60(A)(1) creates a cause of action for the victim of a crime to "recover full damages," suggesting the statute is not penal. To be sure, some parts of the statute allow for recovery of amounts that are penal in nature, such as punitive damages or attorneys' fees. But it is difficult to see why such language, subsidiary to the statute's authorization of a civil action to recover damages, would make it penal in nature as a whole.

> In this regard, *Rosette* may provide a rough analogy by virtue of its reliance on the statutory text and relying on the word "damages" in the statute. Even if *Rosette* does not remain good law or, as [defendant] argues, is limited to its facts and has no application here, the substantive force of Section 2307.60 suggests a different limitations period should apply. In *Jacobson v. Kaforey*, 149 Ohio St. 3d 398, 2016-Ohio-8434, 75 N.E.3d 203, ¶ 12, the Ohio Supreme Court held that Section 2307.60 creates "a civil cause of action for damages." That holding does not sound like characterizing the statute as penal in nature. Rather, the statute provides crime victims with a civil recovery when they experience an injury to person or property.

> That statutory aim also suggests a longer limitations period. Actions for injuries to person or property generally, though not always, have longer limitations periods. Personal injury claims, for example, have a two-year limitations period. Ohio Rev. Code § 2305.10(A). And the general statute of limitations for felonies is six years. *Id.* § 2901.13(A)(1)(a).

> Yet Ohio's lower courts continue to apply a one-year limitations period, even after the Ohio Supreme Court's ruling in *Jacobson. See, e.g.*,

*Ettayem v. H.E.R., LLC*, 5th Dist. Delaware No. 19 CAE 12 0070, 2020-Ohio-4647 [2020 WL 5798228], ¶ 24, 26 (affirming and adopting judgment of Delaware County Court of Common Pleas). So have the federal courts. *See, e.g., Marquardt v. Carlton*, No. 1:18 CV 333, 2019 WL 1491966, at \*3 (N.D. Ohio Apr. 2, 2019). Contrary to Plaintiff's argument, not all State or federal decisions reach this conclusion through unreasoned application of decisions superseded by the Ohio Supreme Court's decision in *Jacobson. See, e.g., id.; Duffey [v. Pope*, 2012 WL 4442753, at \*7] (analyzing various State and federal authorities to determine one-year limitations period applies). Based on the uniform authority in the State and federal courts that have considered the issue, the Court predicts the Ohio Supreme Court would determine that a one-year statute of limitations applies to claims under Section 2307.60.

*Id.* at 800-801.

{¶58} In *Jacobson, supra,* the Ohio Supreme Court answered in the affirmative the following certified question, "[d]oes the current version of R.C. 2307.60 independently authorize a civil action for damages caused by criminal acts, unless otherwise prohibited by law?" The Ohio Supreme Court opined:

R.C. 2307.60(A)(1), by its plain and unambiguous terms, creates a statutory cause of action for damages resulting from any criminal act. The wording chosen by the Ohio General Assembly is explicit: any person "injured \* \* \* by a criminal act *has* \* \* \* a civil action" unless a civil action "is specifically excepted by law." (Emphasis added.) R.C. 2307.60(A)(1). The title of the legislation originally enacting that language in R.C. 2307.60, which became effective in 1985, demonstrates that the General Assembly specifically sought to create a civil cause of action for damages resulting from *any* criminal act: "**AN ACT** \* \* \* to amend, for the purpose of adopting a new section number as indicated in parentheses, section 1.16 (2307.60) \* \* \* of the Revised Code to establish a specific statutory civil action for the

recovery of full damages for personal injury or property loss arising from any criminal act * * *." (Boldface and capitalization sic.) Am.Sub.H.B. No. 426, 140 Ohio Laws, Part II, 3783. These legislative statements are crystal clear. We need not dig further for the meaning of the statute when the language that was signed into law is so clear. Although R.C. 2307.60 has been amended a number of times since 1985, current R.C. 2307.60(A)(1) continues to specifically authorize a civil action for damages based on the violation of any criminal statute, unless an exception applies.

*Jacobson* at ¶ 10.

**{¶59}** Advocates of the application of the six-year statute of limitations have cited *Jacobson* as compelling evidence that the Ohio Supreme Court would find R.C. 2307.60 to be remedial in nature based on the foregoing quote, however, the *Jacobson* Court cautioned "[w]e make no ruling today beyond answering the certified-conflict question."

**{¶60}** In 2022, the Tenth District in *Harris v. Cunix*, 2022-Ohio-839 (10th Dist.), became the only Ohio appellate court to hold the six-year limitations statute applies to R.C. 2307.60. The Tenth District advanced three reasons for its conclusion:

The General Assembly's use of the term "damages" rather than "forfeiture" or "penalty" signals that the primary purpose of the statute is to provide a remedy to a crime victim rather than to punish the offender (applying *Rosette*).

Any state action against the offender presumably would be taken pursuant to criminal statutes designed to punish the offender, rather than under R.C. 2307.60, which provides the basis for compensating victims.

That the statute provides for recovery of punitive damages does not definitively render the statute penal in nature, as the overall purpose of the statute is to compensate the victim.

*See Harris* at ¶ 34-35.

**{¶61}** The Tenth District cited with favor our decision in *Brothers*, *supra*, particularly the rationale advanced regarding the availability of punitive damages. *Harris* at ¶ 19. Finally, the *Harris* Court rejected the cases cited by the trial court in the above-captioned appeal due to a dearth of statutory analysis by the Eighth District. The Tenth District observed that *Steinbrick* provides no analysis beyond the cursory finding that the availability of punitive or exemplary damages establishes that the statute "contemplates a penalty." The Eighth District in *Steinbrick* did not consider the significance of the General Assembly's use of the term "damages" rather than "forfeiture" or "penalty," or whether the primary purpose of the statute is to provide a remedy to a crime victim or to punish the offender. Further, *Steinbrick* does not provide any rationale for its conclusion that the provision allowing recovery of punitive damages automatically renders the statute penal in nature. The case cited by the trial court, *Jones Lang*, *supra*, merely follows *Steinbrick* without additional analysis.

**{¶62}** The Tenth District concluded:

> Applying the rationale employed in *Cosgrove*, *Cleveland Mobile*, *Rosette*, *Brothers*, and *Brack*, we find that the trial court erred as a matter of law in concluding that R.C. 2307.60(A)(1) is penal in nature, as we find the statute is remedial in nature. The General Assembly's use of the term "damages" rather than "forfeiture" or "penalty" signals that the primary purpose of the statute is to provide a remedy to a crime victim rather than to punish the offender. Any state action against the offender presumably would be taken pursuant to criminal statutes designed to punish the offender, rather than under R.C. 2307.60, which provides the basis for compensating victims. Further, that the statute provides for recovery of punitive damages does not definitively render the statute penal in nature, as the overall purpose of the statute is to compensate the victim.

*Harris* at ¶ 35.

**{¶63}** Post-*Harris*, federal courts considering the applicable statute of limitations have uniformly adopted the reasoning advanced by the Tenth District in *Harris* to

Case No. 24 MA 0056

conclude R.C. 2307.60 is remedial in nature and subject to the six-year statute of limitations. *See Niederst v. Minuteman Capital, LLC,* 2024 WL 3522413, *15 (N.D. Ohio July 24, 2024); *Hi-Vac Corp. v. Coley*, 2024 WL 4266014, *12 (S.D. Ohio September 23, 2024); *Harbold v. Smash Restro & Bar, LLC*, 2023 WL 4085309, *4 (N.D. Ohio June 20 2023). However, no other Ohio appellate court has addressed the applicable statute of limitations following the Tenth District's opinion in *Harris*.

**{¶64}** With the foregoing case law in mind, we adopt the sound reasoning advanced by the Tenth District and conclude R.C. 2307.60 is remedial in nature and subject to the six-year statute of limitations. First, the plain language of R.C. 2307.60, as recognized by the Ohio Supreme Court in *Jacobson, supra,* creates a civil claim for damages, rather than an action for forfeiture or penalty. Moreover, we have previously recognized in *Brothers, supra,* the availability of punitive damages does not automatically render a statute penal in nature, particularly where the statute's primary purpose is to compensate an injured party. Finally, the trial court's reliance on *Cleveland Mobile, supra,* in which the Supreme Court interpreted the public utilities statute, is misplaced. The Ohio Supreme Court's decision in that case, that R.C. 4905.61 augmented enforcement of the law and deterred violations through penalties, was predicated upon Chapter 49's stated purpose to penalize public utilities for failing to comply with their statutory obligations. The same is not true with respect to R.C. 2307.60, which does not seek to enforce a statutory duty, but instead to compensate a crime victim.

**{¶65}** Having concluded R.C. 2307.60 is remedial in nature, we turn to Appellee's argument that Appellant's theft claim is time-barred because R.C. 2307.61, captioned "Damages recoverable for willful damage or theft; demand; agreement for payment; procedure," is punitive in nature. R.C. 2307.61 allows a "property owner" to recover damages, including treble damages, where the property owner "brings a civil action pursuant to division (A) of section 2307.60 of the Revised Code to recover damages from any person who willfully damages the owner's property or who commits a theft offense, as defined in section 2913.01 of the Revised Code, involving the owner's property." R.C. 2307.61(A).

**{¶66}** However, the complaint in this appeal alleges a violation of R.C. 2307.60 and includes no reference to or prayer for damages pursuant to R.C. 2307.61. Insofar as

no claim for damages has been asserted under R.C. 2307.61 in this case, we decline to consider whether R.C. 2307.61 is remedial or punitive.

{¶67} In summary, Appellant's theft, falsification, and tampering with records claims were asserted pursuant to R.C. 2307.60, which is remedial in nature. Accordingly, we find Appellant's second assignment of error has merit, as the trial court erred in applying the one-year statute of limitations to the first three claims in the complaint.

## CONCLUSION

{¶68} For the foregoing reasons, the judgment entry of the trial court dismissing all four of Plaintiff's claims is reversed, and this matter is remanded for further proceedings.

Waite, J., concurs.

Robb, P.J., concurs.

———————————————

For the reasons stated in the Opinion rendered herein, the assignments of error are sustained and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Mahoning County, Ohio, is reversed. We hereby remand this matter to the trial court for further proceedings according to law and consistent with this Court's Opinion. Costs to be taxed against the Appellee.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## <u>NOTICE TO COUNSEL</u>

**This document constitutes a final judgment entry.**